IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TITO D. MARIN,**

       **Plaintiff,**

**vs.**                                                                     **No. 01cv0076 LH/JHG**

**JO ANNE B. BARNHART,[1]**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Marin's) Motion to Reverse and Remand for a Rehearing, filed August 31, 2001. The Commissioner of Social Security issued a final decision denying Marin's application for disability insurance benefits and supplemental security income benefits. The Court, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion is well taken and recommends that it be GRANTED.

Marin, now forty-nine years old, filed his application for disability insurance benefits and supplemental security income benefits on January 8, 1992 and December 2, 1991, respectively, alleging disability which commenced on July 13, 1987, due to two ruptured discs, a damaged lung, a damaged liver, breathing problems, nausea, and stomach problems. Tr. 37, 68. On March

---

[1] On November 9, 2001, Jo Anne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

15, 1993, the Administrative Law Judge (ALJ) found Marin was disabled within the meaning of the Social Security Act and granted him benefits. Tr. 173. On November 12, 1996, the Commissioner notified Marin his disability had ceased on November 1, 1996, and his benefits were being terminated. Marin appealed. The ALJ held a hearing on May 7, 1998. On April 20, 1999, the ALJ found that Marin's condition had improved. Marin has past relevant work as a truck driver and heavy equipment operator. The ALJ found that Marin did not have the residual functional capacity (RFC) to return to his past relevant work but could perform other work existing in significant numbers in his region. Tr. 25. The Appeals Council denied Marin's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Marin seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). In a benefit termination case, the regulations of the Social Security

Administration require the Commissioner to apply the following specific evaluation steps to determine whether the disability will continue.

1. Is the claimant engaged in substantial gainful activity? If the claimant is (and any applicable trial work period has been completed), the disability has ended.

2. Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. § 404, Subpart P? If so, the disability will continue.

3. Has there been a medical improvement? If yes, is the medical improvement related to the ability to do work?

4. If there has been medical improvement, does the claimant have a severe impairment or combination of impairments? If not, the disability has ended.

5. Can the claimant perform his past relevant work? If yes, the disability has ended.

6. If not, does the claimant have the residual functional capacity to perform any other work?

20 C.F.R. §§ 404.1594(f)(1)-(8) & 416.994(b)(5).

The ultimate burden of proof lies with the Commissioner in a termination proceeding. *Glenn v. Shalala*, 21 F.3d 983, 987 & n.2 (10th Cir. 1994). Medical improvement is defined as any decrease in the medical severity of the impairments present at the time of the most recent favorable medical decision of disability. 20 C.F.R. §§ 404.1594(c)(1) & 416.944(b)(1)(i). A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the impairment(s). *Id.* Symptoms are a claimant's own description of his or her physical or mental

impairment. 20 C.F.R. § § 404.1528(a) & 416.928(a). The claimant's statements alone are not enough to establish that there is a physical or mental impairment. *Id.* Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from a claimant's statements. 20 C.F.R. §§ 404.1528(b) & 416.928(b). Signs must be shown by medically acceptable clinical diagnostic techniques. *Id.* Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques, i.e. chemical tests, EEG, EKG, x-rays. 20 C.F.R. §§ 404.1528(c) & 416.928(c).

In support of his motion to reverse and remand, Marin contends (1) the ALJ's finding that there had been medical improvement related to Marin's ability to work is not supported by substantial evidence and is contrary to law; (2) the ALJ's sole reliance on Dr. Dillon, a DDS nonexamining physician, for his RFC finding is contrary to law; and (3) the number of jobs allegedly available to Marin in the Las Cruces area is not a significant number and therefore cannot form a basis for a finding of an ability to work.

Marin claims the ALJ ignored the evidence in the record that supports a finding that there has been no improvement in his condition. The ALJ found as follows:

> On March 15, 1993, claimant had lumbosacral sprain, disc bulging, chronic back pain and duodenal ulcer. On November 2, 1996, Dr. Skee diagnoses no specific medical impairments. Claimant's sprain, disc bulge and hepatitis were properly treated. Claimant is well muscled, there is no atrophy, and he has full range of motion. Claimant walks freely and normally. He is able to move about quite quickly.
>
> Accordingly, there has been a decrease in the severity of claimant's physical and mental impairments since the date of decision by ALJ Connor. This finding is based on an improvement in the symptoms, signs, and laboratory findings. Claimant's lumbosacral sprain, disc bulging and duodenal ulcer have healed and his

4

> chronic back pain effectively treated. The record considered as a whole shows
> medical improvement.

Tr. 20. Dr. Skee, the DDS consulting physician, examined Marin on November 18, 1996. Dr. Skee found Marin was a "well-developed, well-nourished male, in no acute distress . . . surprisingly well-muscled . . . with no evidence of atrophy anywhere . . . ." Tr. 275. Dr. Skee further found normal range of motion in all extremities except for his back with an inability to perform a full squat or walk on his toes and heels without "quite a bit of difficulty." *Id.* Dr. Skee did not perform a "straight leg raising" measurement. As to Marin's ability to work, Dr. Skee specifically declined to make a judgment. Tr. 276.

Dr. Dillon, a non-examining DDS consulting physician, completed an RFC on May 8, 1997. Dr. Dillon reviewed the record and relied on Dr. Skee's consultative report. Dr. Dillon opined Marin was able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and could push and/or pull (including operation of hand and/or foot controls) unlimited. Adopting Dr. Dillon's findings, the ALJ found "claimant's pain is mild and alleviated with medication and exercise" and "does not reduce his RFC below the wide range of light work." Tr. 25.

On January 21, 1997, Ellen L. Schweigert, a physical therapist, performed an initial physical therapy evaluation. Tr. 281. This was done at Dr. Stanley's request, Marin's treating physician. At that time, Marin reported increased lower back pain which he described as "shock-like pain" which he rated as 7 on a ten point pain scale. *Id.* Marin also reported taking Ultram, an analgesic indicated for the management of moderate to moderately severe pain. *See Physicians'*

*Desk Reference* 2255 (53rd ed.1999). Ms. Schweigert' evaluation indicated Marin (1) experienced significant left radicular symptoms when he flexed his trunk; (2) had 75% reduction in range of motion when he extended his back; (3) lateral flexion right and left increased radicular symptoms; (4) heel walking produced an increase in lower back pain; (5) right straight leg raises produced lower back pain at 70 degrees; (6) left straight leg raises, 45 degrees with significant increase in lower back pain; (7) left Faber positive for lower back pain; (8) right piriformis positive for (L) lumbar pain; (9) left piriformis positive for increasing left radicular symptoms; and (10) A/P mobilization positive for pain at L4, L5. Ms. Schweigert assessed Marin as displaying signs and symptoms of lumbar derangement.

The ALJ failed to mention Ms. Schweigert's January 21, 1997 evaluation in his Decision. Although, the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative, as it is in this case. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ also failed to order an MRI. The Court recognizes that "[a]lthough a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Dep't of Health and Human Servs.* 5 F.3d 476, 479-80 (10th Cir. 1993). "This duty exists even when the claimant is represented by counsel." *Id.* Based on Ms. Schweigert's evaluation and Dr. Skee's reluctance to make a judgment as to whether Marin had the ability to do work-related activities, the Court finds that the ALJ's finding that "there had been a decrease in the severity of claimant's physical and mental impairments since the date of decision by ALJ Connor" is not supported by substantial evidence. The ALJ noted that this finding was "based on an improvement in the symptoms, signs and laboratory findings," but

6

he failed to cite to the record to support this statement. Additionally, the ALJ found "[c]laimant's lumbosacral sprain, disc bulging . . . have healed and his chronic back pain effectively treated." Again, this finding is not supported by the record.

Finally, Marin submitted supplemental medical records to the Appeal Council. An MRI of the lumbosacral spine was done on September 7, 1999. The MRI indicated a "Definite prolapse of disk material at L5-S1, centrally and to the left with annular bulge at L4-5 that certainly appears that it can evolve into posterior prolapse. There is evidence of anterior prolapse at L4-5 which may relieve the pressure, posteriorly, and prevent posterior prolapse." Tr. 329, 330. Marin's treating physician, Dr. Hickey, also submitted a letter which indicated that the September 7, 1999 MRI was "consistent with the progressive deterioration of straight leg raising on the left, with spasm, as documented during four different examinations from 1988 to 1997." Tr. 331.

Additionally, at Marin's counsel request, Dr. Hickey reviewed the medical record, including the evaluations performed by physical therapists and doctors as part of Marin's disability determination. Tr. 341. Based on the medical record, Dr. Hickey concluded the "objective, measurable testing by a variety of professional examiners has documented a steady, inexorable deterioration in the severity of Mr. Marin's functional ability." *Id.* Dr. Hickey noted that Dr. Skee's examination failed to document that he performed straight leg raising. *Id.* According to Dr. Hickey, straight leg raising is "a classic symptom of significant radiculopathy." *Id.* The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

7

substantial evidence." 20 C.F.R. § 404.1527(d)(2).  In this case, Dr. Hickey's opinion is supported by the September 7, 1999 MRI and Ms. Schweigert's January 21, 1997 evaluation.

These records corroborate that the Commissioner's decision to terminate benefits is not supported by substantial evidence.  In light of the record as a whole, the Court will remand this case with instructions to reinstate Marin's disability benefits.

## **RECOMMENDED DISPOSITION**

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence.  Marin's Motion to Reverse and Remand Administrative Decision should be granted, and this case should be remanded with instructions to reinstate Marin's disability benefits.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE**

Within ten days after a party is served with a copy of these proposed findings and

recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.